KATHLEEN GALVAN *et al.*, Plaintiffs-Appellants, v. JACKSON PARK HOSPITAL *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—86—3582

Opinion filed August 17, 1989.

Steinberg, Polacek & Goodman, of Chicago (Edward C. Erwin, of counsel), for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Mark C. Fedota, Ruth E. Van Demark, and Edward J. Melia, of counsel), for appellees Dominador R. Dayon and Dayon & Associates.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Kathleen Galvan, plenary guardian of the estate of William T. Galvan, Sr., and the sons of William T. Galvan, Sr., brought an action against defendants, Dr. Dayon and Dayon & Associates, for the wrongful death of William T. Galvan, Sr. The trial court dismissed the action against defendants with prejudice on grounds that defendants were third-party beneficiaries of an agreement that released them from liability. Plaintiffs present the following issues for review: (1)

whether defendants had enforceable rights as third-party beneficiaries to an agreement that was subsequently breached, and (2) whether these beneficiaries obtained such rights so as to preclude the parties from drafting a covenant that was subsequently entered.

We reverse.

William T. Galvan, Sr., was admitted to Jackson Park Hospital on January 16, 1981, for medical and psychiatric treatment. Dr. Dayon, defendant, was Galvan's treating physician. Several days after Galvan was admitted, he attempted to hang himself. The attempted suicide rendered Galvan comatose until his death on April 17, 1982.

Prior to Galvan's death, plaintiffs had begun negotiations with Jackson Park Hospital to dispose of all claims plaintiffs may have had against the hospital and its various affiliates and employees including, arguably, defendants, for the attempted suicide. As part of the proposed agreement the hospital was to pay $675,000 to Galvan's estate to cover expenses that were not reimbursed for Galvan's medical and convalescent care and to oversee such care for the remainder of his natural life.

In consideration of these undertakings the guardians were to "release and forever discharge any and all persons and entities, including but not limited to [Jackson Park Hospital], its affiliated doctors, directors, officers, employees, agents, assigns, successors, subsidiaries and affiliates, from any all [sic] all manner of action, cause and causes of action, claims and demands, whatsoever, in law or equity, which they now have or hereafter can, or shall have whatsoever."

Galvan's ex-wife and sons declared in the agreement that they "release[d] and forever discharge[d] any and all persons and entities including but not limited to [Jackson Park Hospital], its affiliated doctors, directors, officers, employees, agents, assigns, successors, subsidiaries and affiliates of and from any and all claims."

The agreement, allegedly, was conditioned upon obtaining the approval and authorization of the probate division of the circuit court of Cook County, Illinois, and upon the signatures of the various parties to the agreement.

On March 12, 1982, the guardians, Galvan's ex-wife, and his sons signed the release. The release was then delivered to the hospital's legal representatives for signature on March 15, 1982. Galvan died on April 17, 1982. The release was never signed by the hospital. On May 17, 1982, one of the hospital's representatives informed plaintiffs' attorney that the settlement offer of $675,000 was withdrawn. Notwithstanding the withdrawal of the offer, plaintiffs' attorney proceeded to probate court to present the proposed release and settlement for

court approval of its terms.

The hospital was not represented at these proceedings due to, the hospital alleges, lack of notice. The probate court entered an order on June 1, 1982, finding the terms of the proposed agreement reasonable. After receiving a copy of the order, the hospital again informed plaintiffs that a final agreement had never been reached and that the document merely represented preliminary negotiations toward settlement.

Plaintiffs then filed a complaint against the hospital and its attorneys and negotiators to enforce the agreement or, in the alternative, to recover damages for its breach. Counts were also charged against the hospital and various of its employees and affiliates, including defendants, for alleged medical malpractice.

The hospital then filed a motion to dismiss in lieu of an answer. The motion was based on lack of any existing contract or underlying agreement or promise. In early 1984, settlement negotiations between the hospital and plaintiffs took place. Defendants were unaware of these negotiations. As a result of the negotiations, a "Covenant Not To Sue" was entered between plaintiffs and the hospital. Plaintiffs, however, reserved the right to proceed against defendants.

The covenant provided that in consideration of $525,000, plaintiffs agreed to release the hospital, its representatives, employees, and affiliates with the exception of defendants. The covenant was approved by the court on May 29, 1984.

Plaintiffs amended their complaint against defendants which resulted in the dismissal, withdrawal, or a finding of mootness of all but two of the original counts. Defendants then moved to dismiss the remaining counts. On March 17, 1986, defendants' motion was granted and defendants were dismissed with prejudice. Plaintiffs' motion for reconsideration to vacate the March 17 order was denied. It is from these orders that plaintiffs appeal.

The first issue presented for review is whether defendants as third-party beneficiaries had enforceable rights to an agreement that was subsequently breached. We find that a donee beneficiary has no vested interest in an agreement that was subsequently breached or repudiated when the $675,000 settlement monies were not paid.

■■ ■ A donee beneficiary, as distinguished from a creditor beneficiary, is a third party to whom the benefit comes without cost, such as a donation or gift. A creditor beneficiary is a third party to whom a preexisting duty or liability is owed. (*Robson v. Robson* (N.D. Ill. 1981), 514 F. Supp. 99, 102.) Defendants' counsel admitted at oral argument that defendants would be categorized as donee beneficiaries.

We agree. Further, "[w]here the donee beneficiary's right is contingent upon the occurrence of certain events, [such right] does not vest until the occurrence of those events." (*Robson*, 514 F. Supp. at 104.) A creditor beneficiary's rights, as distinguished in *Robson*, vest at the time the contract is executed. Since defendants' rights, as donee beneficiaries, were contingent upon the hospital's performance, which never occurred, defendants' rights never vested.

■ It will not be necessary to address the second issue raised as we find that, as donee beneficiaries, defendants acquired no vested rights in the 1982 settlement agreement which would allow defendants to preclude the parties from entering into the subsequent covenant. The rights of a third-party beneficiary, prior to vesting, may be altered, rescinded, or revoked by the parties to the agreement. *Robson*, 514 F. Supp. at 104.

For the foregoing reasons, the orders of the circuit court with respect to counts I and II are reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.